Thank you Judge Berzon. May it please the court, my name is Mark Caldwell. I'm representing Mr. Betts this morning in this Social Security Disability Appeal. There's actually sort of two sets of issues here, one having to do with Mr. Betts and one having to do with some issues that the Commissioner has brought up. And I wanted oral argument because the Commissioner is suggesting en banc review of these issues. I'm going to talk about two of them. The first is the Commissioner's argument that clear and convincing reasons are not required to reject a claimant's symptom testimony. And I'm simply going to dispose of that rather quickly unless there are questions on the subject by saying it's contrary to a very long line of this Court's cases. The most recently cited in my Rule 28J letter which is Taylor v. Astrew, and there's no question among any of the panels of this circuit that have questioned that standard. So I view it as a non-argument and unless the Court wants me to talk about it more I'm just going to move on. The other issue that is brought up by the Commissioner is perhaps a little bit more troubling and the reason it's a little bit more troubling, although I still think it's a, with all due respect, a non-issue, is the dissent in the Vasquez case where the Commissioner made this same argument that the credit as true rule is not valid and the dissent said, well, that argument appears to be strong. Kagan. I don't quite understand the dispute there. Well, neither do I, but please go ahead. My understanding is that what the rule is, is that if there isn't a basis in the record for the, an adverse credibility determination, then one, it's not that the person necessarily wins, it's, and if there's anything else to be decided it has to go bad. That's the key part, what you just said. If there's anything else that has to be decided. And that's where I think the government and the dissent in the Vasquez case sort of missed the boat. It's not an olly olly infery. It's not that, well, okay, Administrative Lodgett, you screwed up so we're just now going to give benefits to the claimant. So it's not that easy, not at all. There has to be no other issues that must be decided before a determination of disability can be made. And how does this feed into this case? Does it have anything to do with anything, does it only apply to the question of the credibility determination with regard to bets and nothing else? Well, no, because we have two, one treating practitioner and one examining psychologist. That's not really a credibility determination. The problem there, as I understand it, is that the ILJ, he didn't find, at least with regard to Van Ernt, is that his name? Van Ernt, yes, Your Honor. He didn't say he wasn't credible, he just sort of forget. In fact, he said he was extremely credible. He said he didn't bring weight to it. But he just kind of ignored one thing he said, at least that's your argument. Your argument is that on a major point, he didn't take it into account, but he didn't say it wasn't credible, he just didn't deal with it. Yes. The language the ALJ used was at entire odds with what the ALJ did. The ALJ said, I give great weight to this opinion, and then totally ignored the vocational expert's testimony that the limitations set forth by the agency's own examining psychologist would preclude sustained work. Well, he didn't come out and say I reject it, but, you know, if you ignore it under the Smolin case, you are rejecting it. I don't care what kind of language you use. You can say I give it great weight, but if you go ahead and do the exact opposite Why does that suggest that we should send it back for benefits? Because under the credit is true rule, and this ties in with what Judge Berzon was asking me, there are no other issues that must be decided. Every single piece of evidence that the ALJ considered results in a finding of disability. Why? Because of the agency's Well, I suppose the one technically available issue, you did help on that point by asking the question to the vocational, or whoever did it, I don't know if you were there, but the vocational expert, because he then said that this would have made a difference, but I suppose that the ALJ could for some reason have rejected that conclusion. No? An ALJ can reject the evidence upon which the hypothetical question is based Right, and he can't disagree with a vocational expert and say I find that answer not supported by the record, i.e. there are other jobs he could have done? No, I don't believe he can. That would turn the ALJ into a vocational expert. There's only one vocational expert in the room, and that's the vocational expert He's still a witness, and he can still disbelieve witnesses if he has a basis If he has a basis. What basis could there possibly be when there's no contravening testimony? The point is, when you have this vocational expert testimony, as we do in this case, it's uncontroverted. But he could, well, but that in itself may be a conclusion. In other words, the ALJ may say, all right, I see that I didn't address this portion of Dr. Bannard's assessment, but I think that that assessment is inconsistent with other things in the record, and I choose to credit those other things. I think that the weight of the evidence goes against Dr. Bannard, and once we take away that fact, then the V.E.'s opinion is this. That I agree with. He could do that, but he didn't. And if that's the case, then we really should remand, but not remand for an abortive benefit. We should remand so that the ALJ can straighten it all out. No, and here's why. The key issue that Judge Berzon and I were talking about was there are no other issues that must be decided. I mean, on the one hand, the credit as true rule isn't an olly olly infrey for the claimant, but on the other hand, it's not a blank slate for the agency to go on and on and on and on. But, you see, Judge Ivey's point goes back to what I was saying to begin with, which is this isn't an instance in which he said the Dr. Bannard said this thing, but I find against him I say that I don't credit that, and then we say, oh, but you should have credited it. That's not really the problem. The problem here is he just ignored it. He didn't say whether he believed it or he didn't believe it. He just ignored it, which is an administrative law problem. You can't do that, but it's not a question of not crediting it. It's not the same as addressing the crediting question and resolving it. He just glitched out, so to speak. He just didn't deal with it. I agree on the surface of it that he didn't deal with it, but I disagree that that's not the same as rejecting it. When you have circumstances like what we're dealing with, and Lincoln Felcher talks about this and Smolin talks about this, when you have circumstances where the ALJ ignores or, more accurately, picks and chooses what he wants to look at, then he has effectively rejected it. But we do this all the time with regard in immigration. I mean, one thing is, of course, we see a broader range of administrative cases than, presumably, if you're a social security person, you deal with those cases. Yes, that's correct. But in immigration cases, for example, this happens all the time, that we remand cases to the agency because they didn't address X fact. You must have been reading my mind, because that's exactly the sentence I was about to utter. Social security cases are different. Why? Because of the statute. 405A specifically. It allows an award of benefits, but it doesn't mandate an award of benefits under any particular circumstances. No, it does not. But it specifically says a court may remand without a rehearing. That's also true in immigration. I mean, if there's nothing else to be decided, then we just grant. But if there's something else to be decided, then we remand. Well, here's the thing. In an earlier argument, I was listening while I was shuffling through my own papers, you mentioned the Ventura case. And the government routinely brings up the Ventura case, where the Supreme Court said, except in rare circumstances, the matter should be remanded for the agency expertise. But the difference, I think, in social security matters is that we are dealing with a different class of people. For example, if I may talk about something a little more personal here, in the Vasquez case, the dissent talked about Burns versus Shalala. I represented Jimmy Burns. That matter was remanded for further proceedings. He died before the further proceedings. Most recently, in Luna versus Astru, this court remanded for further proceedings. Carmen Luna died before those further proceedings were conducted. Social security cases are different. I see I'm coming up on my time. May I reserve for rebuttal?  Thank you. Go ahead. May it please the Court. I'm Dan Burrows. I'm a Special Assistant U.S. Attorney for the District of Arizona, representing the appellee in this case, Commissioner of Social Security, or Acting Commissioner at this point. Like the appellant, I would like to focus just on the legal issues that were raised in our brief, and then in his request for oral argument in this case, unless the Court has some questions on the merits. I don't know what you mean by the legal issues. But before we get to the legal issues, I mean, one only gets to the legal issues if one assumes that there was a problem in not dealing with this, in saying that he was crediting Dr. Van Erndt, but then not paying any attention to or stating anything about this fairly important statement of Dr. Van Erndt's, which was then the subject of a question to the vocational expert. That's correct, Your Honor. I mean, you wouldn't get to credit as true. You wouldn't get to clear and – well, you could get to the clear and convincing reasons. Is there any reason that that could be justified? Yeah, I think if you look at the Subs Danielson case, which we addressed in our brief. I must say that I was totally mystified by what you were saying in the briefs about it. Maybe you can explain it to me. Okay. I apologize. I didn't write the brief, Your Honor. The Subs Danielson case is pretty clear that the way that these forms work, like this form that Dr. Van Erndt used, also the form that the State Agency doctor – I forget his name – Koretsky or something, used is a two-section form. One section is the summary conclusion section. That's where they check off these boxes, moderate, mild, severe limitations. But then there's another section that addresses the RFC. And the purpose of the RFC section of the form is to take those moderate and mild limitations and distill them into actual, concrete, functional limitations. That's a residual functional capacity finding that the State Agency doctor uses that the ALJ makes later. So what Subs Danielson says is, yes, those moderate, mild, et cetera, et cetera, are relevant, but those are not themselves an RFC finding. And so a vocational expert's testimony on those points is not conclusive, because the vocational expert's testimony is only important insofar as it addresses an actual residual functional capacity. So if you ask a vocational expert, what if we have moderate limitations in X, Y, Z? The question is – I mean, it was only – by asking the question, the lawyer at least advanced the matter one level in at least showing that it could have been of some significance.  The ALJ perhaps didn't have to accept that, but he never accepted it or rejected it. He just did nothing with it. Well, I would agree with the appellant here, insofar as there's three different answers that the vocational expert gives here to basically three different hypothetical questions. One from that. Let me just say one other thing. There's a predecessor problem, which is, again, the doctor that he was saying was – the one he was crediting the most did say this, and the ALJ didn't deal with it at all. That's correct. So the question – and again, I go back to Stubbs-Danielson, because I think this case addresses that. The question is whether those moderate limitations are actually translated reasonably into an RFC finding. But that's a whole different question, okay? I understand the problem with an ALJ, with the agency, looking at things that appear to be – that have legal consequences for the way that you frame the question to the VE. But those are the questions that the Arizona form, the Department of Economic Security, put to the doctor. He answered the question. He checked the box. You asked him the – somebody asked him these questions. They checked which box. He checked the box. Now, if somebody wants to come back to Bannerd and say, what did you mean by that when you said that he was moderately limited in his ability to maintain a regular attendance and be punctual? And there was a place on which he – for findings. He didn't fill that out. But these kinds of questions go to the weight of the conclusion and as to whether his whole answer has been translated properly once it gets to the VE on the stand. But you can't – but you can't ignore what the doctor said. Well, I don't think he ignored it, Your Honor. I think if you look at the actual RFC finding, which was a limitation to unskilled work, which is the simple, basic tasks, and also a limitation of no interaction with the public, no interaction – No, I'm looking at question seven on ER. I think it's 220. I have two different numbers at the bottom of my pages, so I'm not sure which one it is. Either 197 or 220. Okay, 197. But it's question number seven on page five of Dr. Erdman's written report. Because I haven't heard it. If activities within a schedule maintain regular attendance, he's moderately limited, fair limited, not precluded. And that question is then put to the VE, what happens if the guy isn't going to be able to show up for work, you know, occasionally, you know, once a month, once every two weeks, something like that? And the VE says, there's no way they're going to put up with that. The guy can't work. So if the ALJ at that point could have said, well, what if it was less than that, or he could have gotten Van Erd and said, what did you mean by that? He could have done a lot of things, but he did nothing. I don't see how he can ignore it. In other words, if the ALJ wants to come back and say, gee, moderately limited under the regulations means that he's going to miss at least three days per month, is that what you meant, Dr. Van Erd? Van Erd can come back and say, oh, when you said moderately limited, I thought he might have to take half an hour break every afternoon or something or on Fridays or Thursdays. Then you've got some way of translating it. But he can't ignore it. Right. But moderate is the only thing that's in the record. Moderate doesn't have any, like, regulatory definition to this many days. He didn't say that either. He said nothing. Then somebody's going to have to put some flesh on that. Somebody's going to have to make an inquiry. But I don't see how the ALJ can simply pretend like it's not there. Well, I mean, respectfully, I disagree that the ALJ pretended that it wasn't there. I mean, granted, ALJs have to spit out hundreds of these decisions a year. They can't write every one perfectly. But it's clear that he considered this decision. And it's clear that the ALJ gave it. You see, maybe if nobody had brought it up, that would have been a reason. But it was specifically brought up to the vocational expert. Well, I think what was brought up to the vocational expert was a long hypothetical question that included several moderates. Nobody asked the vocational expert specifically about this and only this moderate. I thought they did. I thought they specifically asked about this. I don't believe that's correct. I mean, I could be wrong. All right. So we don't get to any of the other questions. Do we get to any of the other questions unless you lose on this point? Well, if you lose on the Van Erd point, I — the Court could avoid addressing clear and convincing reasons, certainly, because it would have an independent grounds for remaining the case if it did agree with the appellant on Dr. Van Erd. But the clear and convincing reason would apply to the Van Erd thing? No. Clear and convincing reasons — It wouldn't apply to the Van Erd thing because there wasn't any reason given. If we assume that clear and convincing reasons is good circuit law, which the Commissioner argues it's not based on the Bunnell case, but if we assume that it is, I believe that only applies to the credibility finding as to the — As to the claimant. Right. The claimant's subjective description of his condition. So you could avoid answering that. But I think you still have to get to credit as true. And again, I go back to Stubbs Danielson. I don't believe that solely the vocational expert's testimony in this case proves that you're disabled based on those limitations because they're not a residual functional capacity finding. But also, even if it — even if the Court decides that the ALJ did not adequately address Dr. Van Erd's opinion, then the Court has to get to whether to apply the credit as true rule. Now, we've argued in our brief that credit as true is problematic for several reasons. The first is simply because it's inconsistent with the Social Security Act. Social Security Act is very clear that the standard of review in these cases is substantial evidence. It puts the duty for determining disability — But the credit as true only arises if there's a determination made that there isn't substantial evidence for the credibility determination. Well, I don't think that's entirely true, Your Honor. I don't think it's a question of credit as true only applies if there's no evidence in the record from when he gets done. Well, it doesn't say should. I mean, at least the way we do this in immigration cases, and I think the way we do it here, is, you know, you have — if there is no basis in the record for the credibility determination, then the credibility determination is wrong, the opposite of wrong of that being, therefore, you should credit him. So what's wrong with that? But I think there's conflicting evidence on that point — I'm sorry, conflicting authority on that point. In some cases, they have said if there is no evidence anywhere in the record from which the ALJ could have pointed to, which is what I understand you to be saying, but in other cases, it's solely based — No, not substantial evidence. It's solely based on the reasons that the ALJ gave. Now, there may be other reasons that could support that. They're just not articulated in the decision. So you're not really quarreling with credit as true. You're quarreling with the way we're applying it in some instances. Well, I suppose it goes to how you define the credit as true rule. If we're simply saying, look, there's not — there's simply no substantial evidence to discount this anywhere in the record, then I suppose by matter of logic, you could say, well, then it must be true. But that's not — As opposed to whether the reasons given were inadequate, is what you're saying? As opposed to whether the reasons given were — Correct. Correct. And the way that we — certainly the way we see it applied in the district courts and the way we've seen it in most of the panels that have handled this has to do with whether the reasons that were given were adequate, which is a separate thing. What you're talking about, Your Honor, I don't think the agency necessarily would have a problem with. But I don't think in the vast run of cases that that's really how it's applied. It's applied solely based on the reasons that ALJ gave, and that's used to credit testimony. It's inconsistent with the Social Security Act solely because the act puts the weight for determining that on the commissioner, on the court, says immediate reversal should be rare. But I did sort of a quick Westlaw search on Friday. Cases since 2009. This Court has remanded for payment of benefits. Based solely on credit is true, not for other reasons that it might remand for payment of benefits. But citing credit is true 31 times since 2009. That's four — This is not a three-judge court matter, right? Probably not. No. I mean, I think if you look at Judge O'Scanlan's dissent in — And it only comes up if we overturn the credibility determination as to that. As — no, it also comes up with Dr. Vannert as well. Because credit is true applies the way it's been applied not just to credibility findings, but to any evidence. That's been the way it's been applied in the circuit. By the way, the question to the VE was, now, if a person were going to be absent from the case, what would be permissible? I think with unskilled jobs missing one day on a consistent, ongoing basis is a problem. Okay. I'm sorry for that. So it was flagged. I mean, it was directly flagged. Right. Okay. But again, there's no — you know, there's no evidence for what that means exactly. I mean, I would point out, too, that the burden is on the claimant to establish his or her residual functional capacity. It's only on — the burden's only on the commissioner to show jobs that you could perform with that residual functional capacity. So insofar as it's missing evidence, that's on the claimant. It's not on the commissioner. The last thing I want to point out is credit is true applies a categorical rule that credits evidence, which is against the Social Security Act. Because even though — and I agree Section 205G or 405G, if you're looking at the U.S. Code, is — allows a court to order payment of benefits. But the Social Security Act still has standards for determining when a person is disabled. And simply applying a categorical rule is against all those standards. There's no — let's say you're crediting a doctor's opinion. There's no inquiry in the doctor's specialty. There's no inquiry into the medical evidence. There's no inquiry into whether the claimant was affected by drug or alcohol abuse, which is required by the statute. Also, if you're crediting the claimant's testimony, that's directly conflicting. Let's take Dr. Van Aert's testimony here. Mm-hmm. The ALJ here said that Dr. Van Aert was essentially, you know, the best of the bunch. He was the one guy he was really relying on. So in terms of whether he was believable in terms of his credentials, in terms of his thoroughness and so on, we have a determination on all of that. What we — and then we have a situation where one of the things he said was totally ignored. We certainly have no reason not to think that the ALJ, who said he was believing everything this guy said, wasn't believing that. Now, what you do with that is another question, because it's a question of how terminative it is of the bottom line. And as I said, maybe he could have rejected the VE's use of that. But he said he was crediting him. Yeah. I think that's correct, Your Honor. He gave great weight to that opinion. I just disagree that he ignored that portion of it. I think it's adequately compensated for in the residual functional capacity. Okay. You're just about out of time. Thank you very much. And thank you for your help in clarifying some of the mysteries here. Not too much, Your Honor, but let me make a couple quick points. With Dr. Van Erd, as opposed to Stubbs-Danielson, and I share the Court's mystification, Stubbs-Danielson just had one limitation, a person who's going to have slow pace. Fine. But as Judge Bybee pointed out, there are a lot of other things dealing with work other than just pace. You have to be able to show up. You have to be able to sustain that pace. You have to be able to have some persistence, et cetera, et cetera. And the important point with Dr. Van Erd is he didn't even just say the one thing that Judge Bybee pointed out. He didn't count them, but there were seven or eight things where there was a moderate limitation. Sure, moderate wasn't precisely defined, but moderate means more than mild by anybody's definition. And if you add 1 plus 2 plus 3 plus 4 plus 5 plus 6 plus 7, he was asked about the cumulative effect of all of these limitations. That's enough. We shouldn't have to go back and rework this. The other quick point I want to make is simply this, because I hear it all the time. The Social Security Act delegates to the commissioner the role of finder of fact, and that's absolutely true. It has absolutely nothing to do with the credit is true rule. The credit is true rule has an entirely different question. What happens when the commissioner fails the duty to be the finder of fact? And that's an entirely separate question, and that's why this matter should be remanded for payment of benefits. If there are no further questions. Thank you very much. Thank you, Your Honor. The case of Betz v. Astrew, who is not Astrew anymore, but somebody else, is submitted.
judges: Marshall, Berzon, Bybee